**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

LAKE FAIRFAX SEVEN LIMITED
PARTNERSHIP,
<u>Plaintiff-Appellant,</u>

v.

GRUMMAN AEROSPACE CORPORATION,

No. 96-2027

<u>Defendant-Appellee,</u>

and

GRUMMAN CORPORATION; NORTHROP
GRUMMAN CORPORATION,
<u>Defendants.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CA-95-1684-A)

Argued: June 4, 1997

Decided: July 25, 1997

Before HALL, LUTTIG, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Richard J. Conway, DICKSTEIN, SHAPIRO, MORIN &
OSHINSKY, L.L.P., Washington, D.C., for Appellant. Edward Jay

Shapiro, LATHAM & WATKINS, Washington, D.C., for Appellees. **ON BRIEF:** J. Andrew Jackson, Merle M. DeLancey, Jr., DICK-STEIN, SHAPIRO, MORIN & OSHINSKY, L.L.P., Washington, D.C., for Appellant. Thomas L. Patten, John C. Marchese, LATHAM & WATKINS, Washington, D.C., for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Plaintiff Lake Fairfax Seven Limited Partnership appeals the district court's grant of summary judgment to defendant Grumman Aerospace Corporation on the former's claims of breach of contract and breach of covenant of good faith and fair dealing. For the reasons stated herein, we affirm the judgment of the district court.

I.

This dispute arises from a commercial building lease in which Grumman Aerospace leased a building from Lake Fairfax Seven Limited Partnership to be used as the company's base while it performed systems engineering and integration analysis for NASA in connection with the space station program. Paragraph 58.1 of the lease provided Grumman with certain termination rights:

> (a) Tenant has been awarded a program support contract by the National Aeronautics and Space Administration ("NASA"), which Contract is referenced as Space Program Support Contract Number NASW - 4300 ("Program Support Contract"). <u>If Tenant is notified by NASA that Tenant's Program Support Contract has been terminated and if Tenant desires to terminate this Lease as a result thereof</u>, Tenant shall provide written notice to Landlord (the "Termination

2

Notice") within thirty (30) days after Tenant receives such notice from NASA. . . .

   (b) If NASA materially reduces the scope of the work to be performed by Tenant pursuant to the Program Support Contract so that as a result thereof Tenant is required to reduce manpower then supporting the Program Support Contract by fifty percent (50%) or more, then Tenant shall have the right to sublet or assign to NASA or the Jet Propulsion Laboratory of the California Institute of Technology ("JPL") a proportion of the Demised Premises that equals the same percentage of the reduction in manpower, such subletting or assignment to be in accordance with the provisions of Section 26.2(d) hereof as if NASA or JPL were an Affiliate of Tenant.

J.A. at 844-45.

Although Grumman was one of four prime contractors for the space station program at the time it executed its lease with Lake Fairfax, NASA restructured the space station program in 1993 and gave overall responsibility to a single contractor. NASA obtained congressional authorization to restructure the program on a sole source basis without competition in accordance with a "report and wait" provision of the Competition in Contracting Act of 1984, 10 U.S.C. § 2304(c)(7), and informed Congress through a written "Determination and Findings" (D&F) that Boeing had been selected as the new prime contractor. The D&F stated that, rather than conducting an open competition, "NASA can select a single prime from among the group of contractors with the knowledge and experience necessary to minimize the time and waste that could occur during program transition. Then, with the consent of all parties concerned, NASA can simply novate the remaining prime contracts to become subcontracts to the single prime." J.A. at 1526. NASA then directed Boeing to award Grumman a subcontract, and directed Grumman to reduce its workforce on the project from 854 employees to 60 employees.

On November 23, 1993, NASA officially informed Grumman that the contract NASW-4300 would be "terminated" effective December 1, 1993, the same day that Boeing entered into a subcontract with

3

Grumman for Grumman to continue some of the same work that it had been doing under NASW-4300. The letter from NASA stated unequivocally: "You are notified that Contract NASW-4300 (referred to as `the contract') is terminated for the Government's convenience under the clause entitled Termination (Cost-Reimbursement) (May 1986)." J.A. at 1188. As a consequence of this termination, Grumman thereafter exercised its right of termination under paragraph 58.1(a) of its lease with Lake Fairfax, and made an early termination payment of almost $5 million to Lake Fairfax. Lake Fairfax brought this suit against Grumman, alleging breach of contract and breach of covenant of good faith and fair dealing. The district court granted Grumman's motion for summary judgment, holding that Grumman did not breach its contract with Lake Fairfax because NASA had terminated the Program Support Contract, thereby allowing Grumman to terminate the lease, and that Lake Fairfax had failed to produce evidence that Grumman had colluded with NASA to create a sham termination in order to avoid obligations under the lease.

II.

Paragraph 58.1(a) of the lease gives Grumman the right to terminate the lease if Grumman is "notified" by NASA that the Program Support Contract has been terminated. The letter from NASA stated unequivocally: "You are notified that Contract NASW-4300 . . . is terminated . . . ." J.A. at 1188. Thus, there is no doubt that NASA notified Grumman that the contract was terminated, and therefore that Grumman was entitled to terminate the lease under paragraph 58.1(a).

Furthermore, even if the lease did, as the litigants appear to assume, require NASA to actually "terminate" the Program Support Contract, it is clear that NASA did so terminate the contract. Paragraph 58.1(a) of the lease specifically defined the Program Support Contract as NASW-4300. Thus, Grumman's right to terminate the lease did not require termination of all business relations between Grumman and NASA, both direct and indirect, but instead required only that NASW-4300 be terminated. NASW-4300 is obviously no longer in effect because it has been replaced by the prime contract between NASA and Boeing and the subcontract between Boeing and Grumman. Grumman is now only a subcontractor and does not contract directly with NASA. Furthermore, the terms and conditions of

4

the subcontract vary, though slightly, from those of the Program Support Contract. Therefore, it is clear that NASA terminated NASW-4300, thereby triggering Grumman's right to terminate its lease with Lake Fairfax.

Lake Fairfax argues that any termination by NASA was invalid because the Determination and Findings required that NASA "novate" the prime contracts into subcontracts. However, the D&F says NASA "can" novate, and therefore did not create an obligation for NASA to do so. Furthermore, regardless of the legality of the termination under the D&F, NASA's December 1, 1993, letter constituted a termination as required by paragraph 58.1(a) unless and until NASW-4300 was reinstated.

III.

Lake Fairfax argues that Grumman violated a covenant of good faith and fair dealing by colluding with NASA to structure a nominal "termination" in order to allow Grumman to terminate its lease with Lake Fairfax. Lake Fairfax bases this assertion on, among other things, communications between NASA and Grumman in which NASA initially stated that it intended to "partially terminat[e]" Grumman's contract and to novate the "unterminated portion" to a subcontract under Boeing. When NASA instructed Grumman to terminate the lease with Lake Fairfax, Grumman responded on November 2, 1993, that its lease with Lake Fairfax provided that "in order for Section 58.1(a) to be effective, Grumman must receive a complete termination of Contract NASW-4300 from NASA." J.A. at 1090. As discussed above, on November 23, NASA provided Grumman with a letter stating that NASW-4300 was "terminated for the Government's convenience." J.A. at 1188.

Lake Fairfax has failed to create a genuine issue of material fact as to whether Grumman violated its duty of good faith and fair dealing. Grumman's extensive efforts to keep NASA from terminating the Program Support Contract in the first place actually promoted Lake Fairfax's financial interests. Furthermore Grumman was under a legal obligation to disclose to NASA information regarding the costs of termination and to "make . . . all reasonable efforts to terminate, assign, settle or otherwise reduce the cost of [the] lease" in order to obtain

5

reimbursement from NASA for the costs of termination of the Program Support Contract. 48 C.F.R. § 31.205-42(e)(2). To the extent that NASA terminated the contract in order to avoid costs to itself that would arise from previously existing contracts, that self-interested action by NASA cannot establish bad faith by Grumman.*

CONCLUSION

For the reasons stated herein, we affirm the judgment of the district court.

AFFIRMED
_____
*The extent to which NASA would be forced to pay for the costs of Grumman's lease with Lake Fairfax in the event of a mere reduction of work on the Program Support Contract cannot be determined.

6